(c) Sonus regularly communicated with public investors via established market communication mechanisms, including through regular disseminations of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

(d) Sonus was followed by several securities analysts employed by major brokerage firms who wrote reports which were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

48. As a result of the foregoing, the market for Sonus' common stock promptly digested current information regarding Sonus from all publicly-available sources and reflected such information in Sonus's stock price. Under these circumstances, all purchasers of Sonus' common stock during the Class Period suffered similar injury through their purchase of Sonus' common stock at artificially inflated prices and a presumption of reliance applies.

## NO SAFE HARBOR

49. The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this complaint. Many of the specific statements pleaded herein were not identified as "forward-looking statements" when made. To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements pleaded herein, defendants are liable for those false

forward-looking statements because at the time each of those forward-looking statements was made, the particular speaker knew that the particular forward-looking statement was false, and/or the forward-looking statement was authorized and/or approved by an executive officer of Sonus who knew that those statements were false when made.

## FIRST CLAIM
### Violation Of Section 10(b) Of
### The Exchange Act Against And Rule 10b-5
### Promulgated Thereunder Against All Defendants

50.   Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

51.   During the Class Period, defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public regarding Sonus's business, operations, management and the intrinsic value of Sonus common stock; (ii) enable insiders to sell more than 250,000 shares of their personally-held stock for gross proceeds of approximately $2 million; (iii) allow the Company to complete a public offering of 17 million shares of Common Stock at a per share price of $7.75 whereby the Company reaped approximately $126.14 million in proceeds; and (iv) cause Plaintiff and other members of the Class to purchase Sonus common stock at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, defendants, and each of them, took the actions set forth herein.

52.   Defendants (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business which operated as a fraud and

18

deceit upon the purchasers of the Company's common stock in an effort to maintain artificially high market prices for Sonus' common stock in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

53. Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the business, operations and future prospects of Sonus as specified herein.

54. These defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Sonus' value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about Sonus and its business operations and future prospects in the light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of Sonus common stock during the Class Period.

55. Each of the Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of his responsibilities and activities as a senior

officer and/or director of the Company was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of and had access to other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew or recklessly disregarded was materially false and misleading.

56.   The defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Sonus' operating condition and future business prospects from the investing public and supporting the artificially inflated price of its common stock. As demonstrated by defendants' overstatements and misstatements of the Company's business, operations and earnings throughout the Class Period, defendants, if they did not have actual knowledge of the misrepresentations and omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

57.   As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price of Sonus' common stock was artificially inflated during the Class Period. In ignorance of the fact that market prices of Sonus's

publicly-traded common stock were artificially inflated, and relying directly or indirectly on the false and misleading statements made by defendants, or upon the integrity of the market in which the common stock trades, and/or on the absence of material adverse information that was known to or recklessly disregarded by defendants but not disclosed in public statements by defendants during the Class Period, Plaintiff and the other members of the Class acquired Sonus common stock during the Class Period at artificially high prices and were damaged thereby.

58. At the time of said misrepresentations and omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true. Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that Sonus was experiencing, which were not disclosed by defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Sonus common stock, or, if they had acquired such common stock during the Class Period, they would not have done so at the artificially inflated prices which they paid.

59. By virtue of the foregoing, defendants have violated Section 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder.

60. As a direct and proximate result of defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's common stock during the Class Period.

## SECOND CLAIM
### Violation Of Section 20(a) Of
### The Exchange Act Against the Individual Defendants

61. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

21

62. The Individual Defendants acted as controlling persons of Sonus within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions, and their ownership and contractual rights, participation in and/or awareness of the Company's operations and/or intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contend are false and misleading. The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

63. In particular, each of these defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

64. As set forth above, Sonus and the Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's common stock during the Class Period.

**WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

(a) Determining that this action is a proper class action, designating Plaintiff as Lead Plaintiff and certifying Plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and Plaintiff's counsel as Lead Counsel;

(b) Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c) Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d) Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: February 23, 2004

By his attorneys,

Thomas G. Shapiro BBO #454680
Theodore M Hess-Mahan BBO #557109
**SHAPIRO HABER & URMY LLP**
75 State Street
Boston MA 02109
(617) 439-3939

Marc S. Henzel
**LAW OFFICES OF MARC S. HENZEL**
273 Montgomery Avenue
Suite 202
Bala Cynwyd, PA 19004
(619) 660-8000

23

Brian M. Felgoise
**LAW OFFICE OF BRIAN M. FELGOISE**
261 Old York Road
Suite 423
Jenkintown, Pennsylvania 19046
(215) 886-1900

**Attorneys for Plaintiff**

CERTIFICATION OF NAMED PLAINTIFF
PURSUANT TO FEDERAL SECURITIES LAWS

_Samuel Ho_ ("plaintiff") declares, as to the claims asserted under the Federal Securities Laws, that:

1. Plaintiff has reviewed the complaint prepared by counsel and is willing to serve as a lead or named plaintiff in the Action on the basis of the allegations in that complaint or a substantively similar complaint or amended complaint to be filed. Plaintiff retains the Law Offices of Marc S. Henzel and such co-counsel it deems appropriate to associate with to pursue such action on a contingent fee basis.

2. Plaintiff did not purchase the Security that is the subject of the complaint at the direction of plaintiff's counsel or in order to participate in any private action arising under the Federal Securities Laws.

3. Plaintiff is willing to serve as a lead or representative party, either individually or as part of a group on behalf of a class, including providing testimony at deposition and trial, if necessary.

4. Plaintiff has made the following transactions during the Class Period in the stock of Sonus Networks, Inc. (Nasdaq: SONS) that are subject of this action:

| DATE | BUY OR SALE | AMOUNT OF SHARES | PRICE PER SHARE |
|---|---|---|---|
| 8/12/2003 | Bought | 3300 Shares | $5.90 |
| 12/29/2003 | Bought | 6600 Shares | $7.51 |

5. In the past three years, plaintiff has not sought to serve as a representative party on behalf of a class.

6. Plaintiff will not accept any payment for serving as a representative party on behalf of a class beyond plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the Class as ordered or approved by the Court.

7. I declare under penalty of perjury that the foregoing is true and correct. Executed this _13th_ day of _February_ 2004.

_Samuel Ho_
Signature